# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| THERESA Q., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. ED CV 18-00895-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Theresa Q. ("Plaintiff") appeals from Social Security Commissioner's final decision rejecting her application for Social Security disability insurance benefits. For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff originally filed applications for disability insurance and Supplemental Security Income benefits in 2011, alleging disability beginning September 23, 2011. The ALJ in that case found that Plaintiff had the severe impairments of multiple sclerosis ("MS") and anxiety. The ALJ concluded, and this Court affirmed, that Plaintiff was not disabled because there was work

available in the national and regional economy which she could perform despite her impairments. See Quintanilla v. Colvin, No. 14-8014, 2015 WL 7312224 (C.D. Cal. Nov. 19, 2015).

Plaintiff filed a second application for disability insurance benefits on October 15, 2014, alleging disability beginning on May 25, 2013, the day after the original ALJ decision. See Administrative Record ("AR") 15. After a hearing in February 2017, the ALJ concluded that Plaintiff had the severe impairments of MS, obesity, asthma, and major depressive disorder ("MDD"). See AR 18. The ALJ also concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. See id. The ALJ then determined that the Plaintiff's residual functional capacity ("RFC") limited her to sedentary work with certain additional limitations. See AR 20. The ALJ concluded that Plaintiff was not disabled because although she could not return to her past work, there was work available in the national economy which she could do despite her limitations. See AR 25-26. This action followed. See Dkt. 1.

## II.
## DISCUSSION

The parties dispute whether: (1) the ALJ properly considered Plaintiff's subjective symptom testimony; (2) the ALJ properly discounted the opinions of Plaintiff's treating physicians; and (3) the ALJ properly considered whether Plaintiff met or equaled the requirements of Listing 11.09. See Dkt. 21, Joint Submission ("JS") at 1-2.

The Court concludes that the ALJ erred in discounting Plaintiff's testimony; the Court also concludes that the ALJ did not properly evaluate whether Plaintiff met or equaled the requirements of the applicable version of Listing 11.09. Because the Court concludes that these issues require remand, the Court will not decide whether Plaintiff's remaining claims of error would

independently warrant relief. Upon remand, the ALJ may wish to consider Plaintiff's other claims of error.

A. **Plaintiff's Symptom Testimony**

    1. **Applicable Law**

The court engages in a two-step analysis to review the ALJ's evaluation of Plaintiff's symptom testimony. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Id. If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so. Id. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

    2. **Analysis**

At the 2017 hearing before the ALJ, Plaintiff testified that she has good days and bad days with about two or three bad days a week. See AR 73. On good days, Plaintiff testified that she would drive her daughter to school and could do housework. See AR 70-71. She would occasionally go shopping and could lift items like milk but could not lift water cartons. See AR 71. Plaintiff also would cook sometimes. See id. Plaintiff testified that sometimes in the middle of housework or cleaning she would get tired and have to rest. See AR 71-72. Plaintiff testified that on bad days she would have vertigo and spend most of the day in bed. See AR 74. She described the feeling as flu-like and further indicated that she would be fatigued on those days as well. See AR 79. Plaintiff testified that she has problems working due to anxiety and slurred

speech. See AR 75. She would also get shaky hands and was frequently tearful. See AR 75-76.

The ALJ found that Plaintiff's medically determinable impairments could be reasonably expected to prove Plaintiff's alleged symptoms, but rejected Plaintiff's testimony about the intensity, persistence, and limiting effects of the symptoms as inconsistent with "medical evidence and other evidence in the record." AR 22. The ALJ found that Plaintiff's daily activities were contrary to her testimony on the severity of her symptoms, noting her ability to maintain her grooming and hygiene, perform household chores, care for a teenaged daughter, prepare meals, shop in stores, watch television, and browse the Internet. See AR 23. The ALJ also found that the conservative nature of Plaintiff's treatment routine and the stability of Plaintiff's condition indicated that the symptoms were not as severe as Plaintiff alleged. See id. Last, the ALJ stated that the objective medical evidence did not support Plaintiff's testimony about her limitations. See id.

The ALJ did not find any malingering. Therefore, the ALJ was required to provide specific, clear and convincing reasons for rejection of Plaintiff's testimony. See Trevizo, 871 F.3d at 678. The Court finds that the ALJ failed to do so.

Substantial evidence does not support the ALJ's conclusion that Plaintiff's daily activities were inconsistent with her testimony about the severity of her condition. When reaching this conclusion, the ALJ ignored Plaintiff's testimony that she would engage in the activities cited by the ALJ on good days while on bad days she did little more than lie in bed. See AR 73-74. Being able to do activities on some days but not others is consistent with her description of her symptoms. The ALJ also failed to demonstrate that these limited activities would be transferable to the workplace. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). Therefore, Plaintiff's daily activities were

not a clear and convincing reason for discounting her testimony.

A conservative course of treatment can provide reason to discount a plaintiff's subjective opinion testimony about the severity of an impairment. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). Here, the ALJ noted that Plaintiff only received medication for treatment, which stabilized her condition, and that Plaintiff did not explain her failure to seek more aggressive treatment. See AR 23. But the ALJ did not explain what more aggressive treatment Plaintiff should have pursued, and no such treatment is obvious to the Court. MS is an incurable, degenerative disease, which is generally managed through medication and routine treatment. See National Multiple Sclerosis Society, Comprehensive Care, https://www.nationalmssociety.org/Treating-MS/Comprehensive-Care (last visited Sept. 20, 2019) ("MS symptoms can be effectively managed with a comprehensive treatment approach that includes medication(s) and rehabilitation strategies."). Other courts have similarly faulted ALJs for finding that MS treatment like Plaintiff's was conservative. See, e.g., Rundell-Princehouse v. Astrue, No. 10-988, 2011 WL 7121604, at *5 (D. Or. Oct. 31, 2011) ("[Plaintiff] has [MS], a progressive and fatal neurological disorder with limited available treatment and without cure. It is unclear what treatment the Commissioner would infer that [Plaintiff] should have utilized."); Jarrett v. Berryhill, No. 16-843, 2017 WL 8186680, at *3 (C.D. Cal. Nov. 27, 2017) (holding that conservative treatment for MS was not a clear and convincing reason because "it is not clear that other treatment was available"). Therefore, because it is not clear that other treatment was available to Plaintiff, the ALJ was not permitted to discredit Plaintiff for failing to seek more aggressive treatment and receiving only conservative care. See Lapierre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

Accordingly, the ALJ did not have an adequate basis to reject Plaintiff's subjective symptom testimony except the finding that the objective medical evidence did not support Plaintiff's testimony. However, "lack of medical evidence cannot form the sole basis for discounting pain testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Remand is accordingly warranted on this issue.

**B.     Listing 11.09**

   **1.     Applicable Law**

At step three of the sequential evaluation process, an ALJ considers whether an applicant has an impairment or combination of impairments that meets or medically equals an impairment included in the regulations' listing of disabling impairments. Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1996). Thus, if the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. 20 C.F.R. § 416.920(d); Sullivan v. Zebley, 493 U.S. 521, 525 (1990).

The claimant bears the burden of proving that she has an impairment that meets or equals a listed impairment. Burch, 400 F.3d at 683; Zebley, 493 U.S. at 530 (noting burden of proof rests with claimant to provide and identify medical signs and laboratory findings that support all criteria for step three impairment determination). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." Id. (quoting 20

C.F.R. § 404.1526). "A generalized assertion of functional problems is not enough to establish disability at step three." Id. at 1100; see 20 C.F.R. § 416.926.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). But an ALJ does not have "to state why a claimant failed to satisfy every different section of the listing of impairments." Gonzales v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).

### 2. Analysis

Here, Plaintiff argues that the ALJ failed to consider Listing 11.09, and the opinions of two treating doctors who opined that Plaintiff met the requirements of Listing 11.09. See JS at 40-46.

In early 2016, two of Plaintiff's treating physicians, Dr. Jeffrey Ries and Dr. Corliss Shelton, answered an interrogatory propounded by counsel about whether Plaintiff met or equaled the criteria of Listing 11.09. See AR 380, 420. Both responded that she did. See id. Dr. Ries explained that Plaintiff met the listing criteria because she had a "gait impairment affecting both lower extremities with associated sustained difficulty." AR 380. Dr. Shelton stated that Plaintiff met the criteria because of, among other things, "fluctuating fatigue, difficulty concentrating and intermittent gait impairment." AR 420.

The ALJ gave these opinions "little weight." AR 24. Oddly, the ALJ did not do so in his discussion of whether Plaintiff's impairments met or equaled the criteria of a listed impairment. See AR 18-20. Indeed, the ALJ did not discuss Listing 11.09, the listing applicable to multiple sclerosis, at all in that portion of his decision. Instead, the ALJ discussed the doctors' opinions when formulating the RFC. See AR 24. There, the ALJ noted that the opinions were

7

entitled to "little weight," as Listing 11.09 "requires evidence of disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." Id.

But it appears from that statement that the ALJ applied a current (or recent) version of Listing 11.09 rather than the version in effect at the time Plaintiff filed her application in October 2014. But it appears to the Court that the ALJ was required to apply the latter. See Maines v. Colvin, 666 F. App'x 607, 608 (9th Cir. 2016). The 2014 version of Listing 11.09 required the ALJ to analyze whether Plaintiff had one of the following:

> A. Disorganization of motor function as described in 11.04B; or
> B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
> C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. pt. 404, subpt. P, app. 1 § 11.09 (2014). The ALJ's failure to discuss the correct version of Listing 11.09 leaves the Court at best uncertain about whether the ALJ evaluated Listing 11.09's requirements. Accordingly, and because remand is already necessary, the Court finds remand is also appropriate on this issue.

### III.
### REMAND IS WARRANTED

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that

the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion). A remand is appropriate where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003). Here, the Court finds that remand is the appropriate remedy to allow the ALJ to reconsider Plaintiff's subjective symptom testimony, reconsider whether Plaintiff meets or equals the criteria of Listing 11.09, and to conduct such other proceedings as are warranted.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is reversed and the action is remanded for further proceedings consistent with this order.

Dated: October 2, 2019

DOUGLAS F. McCORMICK
United States Magistrate Judge